UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DOUGLAS ALLEN MARLOW,

       Plaintiff,                    CIVIL ACTION NO. 13-11276

vs.

                                    DISTRICT JUDGE PAUL D. BORMAN

COMMISSIONER OF                  MAGISTRATE JUDGE MONA K. MAJZOUB
SOCIAL SECURITY,

       Defendant.
_____/

## REPORT AND RECOMMENDATION

**I.    RECOMMENDATION:** This Court recommends that Plaintiff's motion for remand pursuant to sentence four (docket no. 13) be **DENIED** and Defendant's motion for summary judgment (docket no. 15) be **GRANTED**.

**II.    PROCEDURAL HISTORY:**

Plaintiff protectively filed a Title II application for a period of disability and disability insurance benefits on July 14, 2010, alleging disability beginning June 7, 2008 due to a heart attack, pain in his feet and lower back, degenerative arthritis, and a history of Hodgkin's lymphoma. (TR 171-74, 202-03, 207). The Social Security Administration denied benefits and Plaintiff filed a written request for a *de novo* hearing. On September 1, 2011 Plaintiff appeared with counsel in Mt. Pleasant, Michigan and testified at a hearing held before Administrative Law Judge (ALJ) Craig Petersen. (TR 35-99). Vocational Expert (VE) Michelle Ross also appeared and testified at the hearing. In a September 23, 2011 decision the ALJ found that Plaintiff was not entitled to disability benefits because he did not have a severe impairment or combination of impairments. (TR 22-30).

The Appeals Council declined to review the ALJ's decision and Plaintiff filed a complaint for judicial review.

### III.     PLAINTIFF'S TESTIMONY AND MEDICAL EVIDENCE

#### A.      Plaintiff's Testimony

Plaintiff was approximately fifty years old on his alleged disability onset date. He graduated from high school and took college courses but did not earn a college degree. (TR 43). He completed motorcycle mechanics training in 2007 and he worked as an over-the-road truck driver from December 2008 through April 2009. (TR 43, 49). He lives at home with his wife. He has an unrestricted driver's license and drove two and one half hours to reach the hearing. (TR 42).

Plaintiff testified that he has coronary artery disease although he did not realize he had a heart condition until he suffered a heart attack in 2010. (TR 58-59). He also has lymphoma, problems with his lower back and feet, and post traumatic stress disorder. He has hammer toes and has had reconstructive surgery on his feet. He claims that he walks funny and he has constant throbbing in his feet. His feet and calves swell throughout the day. He experiences a level six pain and stiffness in his lower back even on Vicodin. (TR 67). He stated that he developed back and hip problems because of the way he walks. He reported that he has difficulty sitting and standing and he gets confused easily. He also gets short of breath which he attributes to chronic obstructive pulmonary disease and his heart condition. (TR 66). He uses hot packs and medication to help relieve his back pain. He began wearing hearing aids in 2006 and he is unable to hear what people say when they are standing behind him. (TR 77-78).

He testified that his cardiologist put him on a forty pound weight restriction after his heart attack but he claims he can lift only twenty pounds. He can stand fifteen to twenty minutes at a time

before his legs start tingling and his feet begin to drag. He claims that he can walk approximately fifty yards on a good day and he can sit for up to one hour. Although his hands cramp he has no difficulty buttoning shirts or dressing. He watches television, loads and unloads the dishwasher, washes laundry and uses the clothes dryer, cooks dinner, shops for groceries, and pays the bills. He rides his motorcycle once a year. He rebuilt his carburetor three months before the hearing date. In October 2008 he and his wife would spend up to four hours at a time cutting down trees and splitting wood for home heating purposes. He maintains close friendships and sees one of his friends daily. He uses the email to keep in touch with his parents and son.

**B.     Medical Evidence**

The undersigned has thoroughly reviewed Plaintiff's medical record. In lieu of summarizing Plaintiff's medical history, the undersigned will make references and citations to the record as necessary in response to the parties' arguments.

**IV.    VOCATIONAL EXPERT TESTIMONY**

The ALJ asked the VE to testify whether jobs were available for an individual with Plaintiff's age, education, and past work experience who was able to perform the following tasks: (a) lift and carry up to twenty pounds occasionally and ten pounds frequently, (b) push and pull up to ten pounds occasionally, (c) stand and walk up to six hours in an eight hour work day, (d) sit up to six hours in an eight hour work day with normal breaks, (e) occasionally climb stairs and ramps, stoop, kneel, crouch, and crawl, (f) never climb ropes, ladders, or scaffolds, (g) requires a cane to pull himself up from a kneeling position, (h) no repetitive bending and twisting at waist level, (i) no manipulative or visual limitations, (j) verbal communication must be face to face within at least ten feet of each other, (k) must avoid concentrated exposure to heat, humidity, cold, gases, and fumes,

and (l) requires no limitations with respect to concentration, persistence, and pace, and has no social deficiencies. (TR 94). The VE testified that the hypothetical individual could not perform Plaintiff's past relevant work but could perform light unskilled jobs including machine tender (DOT 754.685-014), counter clerk (DOT 311.477-014), and light assembler (DOT 706.684-022), comprising approximately 36,700 jobs in the State of Michigan. (TR 94-95).

Next, the ALJ asked the VE whether jobs would be available for an individual who, in addition to the limitations in the first hypothetical, also required simple, routine, and repetitive tasks, few work place changes, an option to sit or stand at will, and only occasional interaction with co-workers, supervisors, and the general public. The VE testified that an individual with these limitations could work as a machine tender, light assembler, and line attendant (DOT 920.687-042) with 26,600 jobs in the State. The individual could perform the same jobs even if he required a limitation permitting only two hours of standing and walking in an eight hour work day. If the individual was off task twenty percent or more of any work day and would miss three or more days of work each month he could not perform the listed jobs. The individual would not be able to sustain competitive employment if he needed to walk away from his work station every twenty to thirty minutes for up to ten minutes at a time.

## V.     ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that Plaintiff last met the insured status requirements of the Social Security Act on June 30, 2008. The ALJ further found that although Plaintiff has not engaged in substantial gainful activity during the period from his alleged onset date of June 7, 2008 through his date last insured of June 30, 2008, and suffered from the medically determinable impairments of chronic obstructive pulmonary disease, lumbar spine degenerative disc disease, Hodgkin's disease,

4

gastroesophageal reflux disorder, bilateral hammer toe, obesity, and post traumatic stress disorder, he did not have an impairment or combination of impairments that significantly limited his ability to perform basic work-related activities for twelve consecutive months through the date last insured. (TR 22-30). The ALJ concluded that because Plaintiff did not have a severe impairment he was not under a disability as defined in the Social Security Act at any time from June 7, 2008, the alleged onset date, through June 30, 2008, the date last insured.

## VI.  LAW AND ANALYSIS

### A.  Standard Of Review

Pursuant to 42 U.S.C. § 405(g), the district court has jurisdiction to review the Commissioner's final decisions. Judicial review under this statute is limited to determining whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner's decision employed the proper legal standards. *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999).

5

**B.     Framework for Social Security Disability Determinations**

Plaintiff's Social Security disability determination was made in accordance with a five step sequential analysis. In the first four steps, Plaintiff was required to show that:

1. he was not engaged in substantial gainful employment; and
2. he suffered from a severe impairment; and
3. the impairment met or was medically equal to a "listed impairment;" or
4. he did not have the residual functional capacity to perform his past relevant work.

20 C.F.R. § 404.1520(a)-(f). If Plaintiff's impairments prevented him from doing his past relevant work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education and past work experience to determine if he could perform other work. If he could not, he would be deemed disabled. 20 C.F.R. § 404.1520(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [plaintiff] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health & Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987) (citation omitted). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question if the question accurately portrays the plaintiff's physical and mental impairments. *Id.* (citations omitted).

**C.     Analysis**

The Social Security Act authorizes "two types of remand: (1) a post-judgment remand in conjunction with a decision affirming, modifying, or reversing the decision of the Secretary (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the Secretary (a sentence-six remand)." *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (citing 42 U.S.C.

§ 405(g)). Under a sentence four remand, the Court has the authority to "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a hearing." 42 U.S.C. § 405(g). Where there is insufficient support for the ALJ's findings, "the appropriate remedy is reversal and a sentence-four remand for further consideration." *Morgan v. Astrue*, No. 10-207, 2011 WL 2292305, at *8 (E.D. Ky. June 8, 2011) (citing *Faucher*, 17 F.3d at 174).

Plaintiff's disability claim was denied at step two of the five-step sequential analysis after the ALJ concluded that Plaintiff had failed to demonstrate that he had a severe impairment. In his motion Plaintiff challenges the decision to stop the analysis at step two, arguing that the evidence shows that he suffered from the severe impairments of chronic foot, back, and hip problems, as well as post traumatic stress disorder.

At step two of the sequential analysis Plaintiff was required to show that he suffered from a severe impairment. An impairment or combination of impairments is severe if it significantly limits the claimant's physical or mental ability to perform basic work activities. 20 C.F.R. § 404.1520(c). Basic work activities, defined as the physical or mental abilities and aptitudes to perform most jobs, includes the ability to walk, stand, sit, lift, push, pull, reach, carry, handle, hear, understand, carry out, and remember simple instructions, use judgment, respond appropriately to supervision, co-workers and usual work situations, and deal with changes in a routine work setting. 20 C.F.R. § 404.1521

The Sixth Circuit court has determined that the step two requirement serves as a "de minimus" threshold hurdle in the disability process. *Higgs v. Bowen*, 880 F.2d 860, 862-63 (6th Cir. 1988). The inquiry at step two functions as an "administrative convenience to screen out claims that

are totally groundless" from a medical perspective. *Id.* at 863. An impairment can be considered not severe only if it constitutes a "slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education and work experience." *Farris v. Sec'y of Health & Human Servs,* 773 F.2d 85, 90 (6th Cir. 1985) (citation omitted). "Under this standard, the question ... is whether there is substantial evidence in the record supporting the ALJ's finding that [plaintiff] has only a 'slight' impairment that does not affect [his] ability to work." *Id.*

In finding that Plaintiff had no severe impairments, the ALJ recognized that Plaintiff has the medically determinable impairments of chronic obstructive pulmonary disease, lumbar spine degenerative disc disease, Hodgkin's disease, gastroesophageal reflux disorder, bilateral hammer toe, obesity, and post traumatic stress disorder. Plaintiff challenges the ALJ's findings with respect to his foot condition, degenerative disc disease, and post traumatic stress disorder.

With regard to his foot condition, the ALJ acknowledged that Plaintiff had surgery in 1983 to correct his bilateral hammertoe condition. The ALJ discussed x-ray results taken in 2006 that showed only slight right and incipient left deformities with minimal spur formation. He also reviewed x-rays taken in November 2009 which showed hallux valgus deformities with bilateral bunion formation. He noted that Plaintiff had three orthotic prescriptions and reported diminished pain and an improved gait with orthotic use. He also noted that Plaintiff reported that his foot pain improved with weight loss.

Plaintiff argues that his testimony, along with the objective evidence, reveals that his foot condition was severe. He also claims that his foot condition caused secondary problems in his hips. He points to a December 2006 Veteran's Compensation and Pension Examination and argues that

it shows that he had pain, swelling, and numbness in his feet, worse with walking and standing. A review of the December 2006 physical examination shows that Plaintiff complained of pain but had no evidence of tenderness or painful motion of the left or right foot and only trace edema. There was no evidence of weakness or instability. Plaintiff was observed to have a slightly slower gait with bilateral bunion deformity. (TR 719-721). As noted by the ALJ, as late as August 2010 Plaintiff's condition was described as progressively worsening although his pain was reportedly improving with use of orthotic inserts and weight loss. (TR 462, 558). The ALJ noted that Plaintiff gathered and cut wood and the evidence shows that Plaintiff was busy cutting wood in October 2008, just four months after his last insured date. (TR 27, 299). The ALJ also noted that Plaintiff had no standing or walking limitations and he remained engaged in motorcycle repairs during the relevant time period. As for his hip condition, an x-ray of his hip showed only mild hypertropic changes. (TR 596). The undersigned suggests that Plaintiff has not demonstrated that his foot condition was severe during the relevant time frame between the alleged onset date of June 7, 2008 and the date last insured of June 30, 2008.

Next, Plaintiff argues that his degenerative disc disease was a severe impairment. The ALJ discussed x-ray examinations from November 2006 that showed only minimal sclerosis at the L5-S1 level possibly related to scoliosis. A March 2010 x-ray examination revealed a normal alignment and curvature in his lumbar vertebrae with no spondylolisthesis but with mild degenerative bony spurs and slight narrowing of the L4-L5 disc space. The ALJ noted that Plaintiff used pain medication sparingly and concluded that evidence of Plaintiff's degenerative disc disease did not support a severe impairment.

Plaintiff points to a November 2006 Compensation and Pension Examination which shows that he complained of low back pain in the mornings, worsening with forward bending. The record shows that Plaintiff's condition was stable and treated with Motrin. (TR 727). He had no leg, foot, or back weakness, no instability, and no decreased motion. He did complain of non-radiating pain between one and six days per week. A physical examination showed no spasms, atrophy, guarding, pain with motion, tenderness, or weakness. Plaintiff had a normal gait and posture. He had reports of pain on movement of the thoracolumbar spine. The ALJ considered this evidence, noting that the examiner's impression was only minimal sclerosis at the L5-S1 level possibly related to scoliosis. In 2010 Plaintiff was observed to have pain with a reduced range of motion. (TR 498). The ALJ reviewed Plaintiff's activities of daily living and evidence showing that he engaged in motorcycle repairs and wood cutting activities near the date last insured. He noted that while certain of Plaintiff's medical conditions may have worsened over time, the evidence does not show that Plaintiff had a severe impairment during the relevant time period. The undersigned concludes that Plaintiff has not demonstrated that the ALJ erred in his assessment of Plaintiff's degenerative disc disease.

Plaintiff makes similar arguments with respect to his post traumatic stress disorder. An August 2010 examination states that Plaintiff has occasional nightmares and tested positive on questions for post traumatic stress disorder. (TR 514). The ALJ addressed this issue and found that Plaintiff was not taking medication and had not sought treatment for post traumatic stress disorder. Plaintiff has not demonstrated that the ALJ erred in his conclusion that his post traumatic stress disorder was not a severe impairment during the relevant time period.

The ALJ's step two analysis is supported by substantial evidence and should not be disturbed. Accordingly, Plaintiff's motion for remand should be denied and Defendant's motion for summary judgment should be granted.

**REVIEW OF REPORT AND RECOMMENDATION**:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated: January 15, 2013         s/ Mona K. Majzoub
                                MONA K. MAJZOUB
                                UNITED STATES MAGISTRATE JUDGE

## **PROOF OF SERVICE**

      I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.


Dated: January 15, 2013                s/ Lisa C. Bartltt
                                                  Case Manager